IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CARITA WILLIAMS, individually and on behalf of a class of all others similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) MOXLEY & ASSOCIATES LLC and ) MIDLAND FUNDING LLC, ) ) Defendants. ) | CIVIL ACTION NO. 18-00028-KD-N |

## ORDER

This action is before the Court on Midland Funding LLC's unopposed Motion to Compel Arbitration and to Strike Class Allegations and Memorandum in Support (Midland) (doc. 9). Upon consideration, and for the reasons set forth herein, the Motion is **GRANTED,** the Class Allegations are **STRICKEN,** and Plaintiff's claims are referred for arbitration in accordance with the terms of the Arbitration Provision in the Account Agreement. Accordingly, Midland's request to stay this action is **GRANTED** and the action is **STAYED.**[1] The parties are **ORDERED** to file a **status report** on or before **December 21, 2018**.

---

[1] "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

I. <u>Findings of Fact and Procedural Background</u>

According to the class action complaint, Plaintiff incurred an "obligation" to Credit One Bank, N.A. (doc. 1). In July 2014, Credit One issued a credit card to Plaintiff (doc. 9-1). The card and a copy of the Account Agreement were mailed to her. Credit One's records indicate that the credit card was activated and Plaintiff used the credit card (doc. 9-1, Exhibit 3). Credit One has no record of the Account Agreement being returned (doc. 9).

The Account Agreement includes the following "Agreement to Arbitrate":

> You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1, et seq., and (to the extent State law is applicable), the State law governing this Agreement.

(Doc. 9-1, p. 10).

The Account Agreement contains a choice of law provision which sets forth as follows:

> Governing Law: This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence.

(Id., p. 8).

With respect to "Claims", the Arbitration Provision sets forth as follows:

> Claims subject to arbitration include, but are not limited to, disputes relating to … collections matters relating to your account .. . the application, enforceability or interpretation of this Agreement, including this arbitration provision; and any other matters relating to your account[.] . . .

(Id., p. 10).

The Arbitration Provision contains a waiver of class action litigation, specifically:

> Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such Claims must proceed on an individual basis.
>
> If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, whether as a class action, private attorney general action, other representative action or otherwise.

(Id.).

The Account Agreement also states that the Arbitration Provision applies to "Claims that relate directly to us . . . and any … successors" (Id.) and defines "we", "us" and "our" to mean Credit One and its "successors or assigns" such as Midland (doc. 9-1, p. 6). Midland was the ultimate purchaser of Plaintiff's charged-off debt from Credit One (doc. 9, p. 3, n.1; doc. 9-2) and acquired all rights, title, and interest in the debt including Credit One's rights under the Account Agreement and the Arbitration Provision. (Id.)

In February 2017, on Midland's behalf, Defendant Moxley & Associates LLC, sent a collection notice letter to Plaintiff which stated in relevant part, as follows:

> Unless you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.

(doc. 1-1).

Plaintiff claims that the statute requiring this notice from a debt collector to a consumer debtor, 15 U.S.C. § 1692g(a)(4) of the Fair Debt Collection Practices Act, provides the consumer the "right to dispute an alleged debt in writing or over the phone" (doc. 1, p. 5). Plaintiff claims that Defendants failed "to provide an accurate validation notice" which "led the Plaintiff, as it would any least sophisticated consumer, to believe the only effective method of disputing the alleged debt would be in writing." (Id.) Plaintiff alleges that Congress adopted this statute "to guarantee that consumers would receive adequate notice of their rights under the FDCPA" and

3

that by "providing an inaccurate validation notice" – one that explained that Plaintiff had the right to dispute the debt in writing, but did not explain that Plaintiff could dispute the debt over the phone – "the Defendants caused the Plaintiff real harm." (Id.).

Defendant Midland filed the Motion to Compel Arbitration and to Strike Class Allegations and Memorandum in Support (doc. 9). Midland also provided the affidavit of Credit One's Vice President (doc. 9-1) and Midland Credit Management, Inc.'s Manager of Operations (doc. 9-2). Midland argues that Plaintiff is bound by the Arbitration Provision and the Class-Action Waiver included in the Account Agreement with Credit One Bank, N.A. Midland asserts that as the current owner of Plaintiff's defaulted Credit One credit card account, it is entitled to enforce her agreement to arbitrate claims against Midland as an individual as opposed to a class action.

Plaintiff was given an opportunity to respond to the Motion (doc. 10, Order setting the response and reply deadlines). However, Plaintiff did not file a response.

II. Statement of the law

The Eleventh Circuit has held that "a summary judgment-like standard is appropriate" when the district court must decide a motion to compel arbitration *Bazemore v. Jefferson Capital Sys., LLC.*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). The "district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement.' " *Id*. Thus, an order compelling arbitration is " 'in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate.' " *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir.

4

2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed. Appx. 782, 785 (11th Cir. 2008) (citation omitted))

Plaintiff did not respond to Midland's Motion to Compel Arbitration. Since a motion to compel arbitration is treated like a motion for summary judgment, *Bazemore,* 827 F.3d at 1333, the "Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding" this motion. S.D. Ala. Civ. L.R. 56(d). Therefore, the facts contained in the affidavits submitted by Midland and the documents in support are established as true and there is no genuine issue of material fact in dispute (docs. 9-1, 9-2).

However, the Court cannot grant a motion for summary judgment, and consequently, a motion to compel arbitration, simply because the Plaintiff, as the nonmoving party, has failed to respond. The Court still "must consider the merits of the motion" and "ensure that the motion itself is supported by evidentiary materials." *Watts v. Wells Fargo Dealer Services, Inc.*, 2017 WL 2289111, at *1 (N.D. Ala. May 25, 2017) (quoting *United States v. One Piece of Real Prop.*, 363 F.3d 1099, 1101 (11th Cir. 2004)).

III. <u>Analysis</u>

A. <u>Midland as Successor to Credit One</u>

Midland argues that it is entitled to enforce the Arbitration Provision and the Class Action Waiver in the Account Agreement because Credit One's right, title, and interests in Plaintiff's account were ultimately transferred and assigned to Midland. Midland also points out that the Account Agreement specifically defines Credit One to include its successors and assigns.

Plaintiff did not respond to the Motion to Compel Arbitration. Therefore, the facts contained in the affidavit outlining the transactions that lead to Midland's acquisition and exhibits in support (doc. 9-2) are established as true. Accordingly, the Court finds that Midland

5

is the successor to Credit One's rights, title and interest in Plaintiff's account and is entitled to enforce the Arbitration Provision and the Class Action Waiver in the Account Agreement.

B. Mandatory Arbitration

Under the Federal Arbitration Act (FAA), Plaintiff's claims are subject to mandatory arbitration where there is (1) a valid agreement to arbitrate, (2) the claims fall within the scope of that arbitration agreement, and there is (3) "a contract evidencing a transaction involving commerce[.]" *See* 9 U.S.C. § 2. The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (finding that there is a "liberal federal policy favoring arbitration agreements."). The FAA also provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

1. Valid Agreement to Arbitrate

Midland argues that under ordinary contract principles, the Arbitration Provision as set forth in the Account Agreement is valid and enforceable. Midland points out that Plaintiff agreed to the terms of the Account Agreement, and consequently the Arbitration Provision, by accepting and using the credit card issued to her by Credit One and by making payments on the Account.

The "threshold question of whether an arbitration agreement exists … is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (citation omitted); *Gamble v. New England Auto Finance, Inc.*, - - - Fed. Appx. - - -, 2018 WL 2446607, at *1 (11th Cir. 2018) ("Whether a party has agreed to arbitrate an issue is a matter of contract law and interpretation.") (citations omitted). "Absent such an agreement, 'a court cannot compel the parties to settle their dispute

in an arbitral forum.'" *Bazemore,* 827 F. 3d at 1329 (citation omitted). Thus, to conform with the FAA, the district "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349 (11th Cir. 2014) (citations omitted).

The Court of Appeals for the Eleventh Circuit has "consistently held that state law governs the issue of the existence of an agreement to arbitrate under the FAA[.]" *Bazemore,* 827 F. 3d. at 1330. The Account Agreement contains a choice of law provision which sets forth as follows:

> Governing Law: This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence.

(Doc. 9-1, p. 8). The Arbitration Provision also states that "[t]his arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the [FAA] and (to the extent State law is applicable), the State law governing this Agreement." (Doc. 9-1, p. 10).

Midland has not advised the Court as to how the "laws applicable to national banks" would apply to the question of whether a contract was formed. Therefore, the choice of law provision and the Arbitration Provision indicate that the parties agreed to the application of Nevada law. Under Nevada law, "[f]or an enforceable contract, there must be an offer and acceptance, meeting of the minds, and consideration. . . . A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Brinkerhoff v. Foote*, 387 P.3d 880 (Nev. 2016) (internal quotations and citations omitted). Additionally, the "party moving to enforce an arbitration clause has the burden ... [to show] that the clause is valid." *Mirage Casino-Hotel v. Beale St. Blues Co. Las Vegas, LLC,* 2016 WL 1335462, at *1 (Nev. Apr. 1, 2016)

7

(citing *D.R. Horton, Inc. v. Green,* 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004)). "[T]he party opposing enforcement of a valid arbitration clause must establish its defense to enforcement." *Id*. (citing *Gonski v. Second Judicial Dist. Court of States ex rel Washoe,* 126 Nev. 551, 557, 245 P.3d 1164, 1169 (Nev. 2018) *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. Adv. Op. 25, 415 P.3d 32 (2018)).[2]

Plaintiff did not respond to the Motion to Compel Arbitration. Therefore, she did not raise any defense to the formation of a contract, specifically the Arbitration Provision, with Midland.

The affidavits submitted by Midland (docs. 9-1, 9-2) show that Plaintiff applied for, received, and used the credit card from Credit One. The affidavits show that the Account Agreement which was sent with the credit card and governed the parties' relationship, was not returned. The opening paragraph of the Account Agreement states that "[b]y requesting and receiving, signing or using your Card, you agree as follows …" (doc. 9-1, p. 6). The Account Agreement then lists the terms and conditions to which the parties agreed, including the Arbitration Provision. Applying ordinary contract principals, the undisputed evidence establishes the existence of an offer and acceptance and consideration, and shows that the parties

---

[2] Even if the Account Agreement was governed by Alabama law, the results would be the same. Under Alabama law, the "elements of a contract are: (1) an offer and acceptance, (2) consideration, and (3) mutual assent to the essential terms of the contract." *Robbins v. Direct Gen. Ins. Co.*, 2017 WL 5507830, at *2 (Ala. Civ. App. Nov. 17, 2017) (citations omitted). Also, under Alabama law, "[a]rbitration provisions are to be treated like any other contractual provision." *Service Corporation Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003). And "[t]he party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration." *Dannelly Enterprises, LLC. v. Palm Beach Grading, Inc*., 200 So. 2d 1157 (Ala. 2016).

agreed upon the Arbitration Provision's essential terms. Therefore, the Court finds that the parties entered into a valid and binding agreement to arbitrate.

    2. <u>Claims within the Scope of the Arbitration Provision</u>.

Midland argues that Plaintiff's claims fall within the broad scope of the Arbitration Provision. Midland points out that the Arbitration Provision specifically covers any controversy or dispute and specifically includes disputes relating to collections matters. Midland argues that Plaintiff's claim that it violated the FDCPA in the course of collecting a debt, falls within the category of claims that relate to collections matters, and therefore, must be arbitrated.

The Court agrees. The undisputed terms of the Arbitration Provision specifically state that

> Claims subject to arbitration include, but are not limited to, disputes relating to … collections matters relating to your account … and any other matters relating to your account[.]

(Doc. 9-1, p. 10). Thus, Midland's efforts to collect Plaintiff's defaulted account come within the terms of the Arbitration Provision.

Since Plaintiff did not respond to the Motion to Compel, she has not offered any evidence or argument to rebut Midland's argument. Therefore, the Court finds that the undisputed evidence shows that the Account Agreement was the "source of the debt" upon which Midland was "allegedly attempting to collect" and that the Arbitration Provision in the Account Agreement "encompasses the claims at issue in this case." *Ashraf v. Nevada Title and Payday Loans,* 2016 WL 843258, at *3 (D. Nev. Mar. 1, 2016).

    3. <u>Contract Evidencing a Transaction Involving Commerce</u>

In *Jenkins v. First American Cash Advance of Ga., LLC*, 400 F.3d 868 (11th Cir. 2005), the Eleventh Circuit discussed the FAA's requirement that a valid arbitration agreement evidence a transaction involving commerce:

> The FAA makes enforceable a written arbitration provision in a contract evidencing a transaction involving commerce. The FAA defines "commerce" as commerce among the several States. The Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"- words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. The Court has further explained the phrase "evidencing a transaction" means only that the transaction turns out, in fact, to have involved interstate commerce, even if the parties did not contemplate an interstate commerce connection.

*Jenkins*, 400 F.3d at 874 (internal citations and quotation marks omitted).

There is no genuine dispute of material fact that Plaintiff obtained a credit card from Midland's successor Credit One, that she activated and used the credit card and thus became bound to the terms of the Account Agreement (doc. 9, p. 2; doc. 9-1; doc. 9-2). The credit card was issued by Credit One in Nevada and the credit card and Account Agreement containing the Arbitration Provision were sent to the Plaintiff in Alabama. (Id.) Thus, the Court finds that the Arbitration Provision evidences a transaction involving commerce and this requirement of § 2 of the FAA has been satisfied.

C. <u>Class Action Waiver</u>

Midland argues that Plaintiff validly waived her right to pursue a class action either in the district court or at arbitration because she agreed to the terms of the Class Action Waiver by using the credit card issued by Credit One. Midland also points out that the Supreme Court has held that allowing class wide arbitration interferes with the fundamental attributes of arbitration and creates a scheme inconsistent with the FAA. Midland asserts that the Court should strike the class allegations and compel arbitration on Plaintiff's individual, non-class claims.

The Supreme Court has held that class action waivers in arbitration clauses are enforceable unless declared unenforceable upon grounds that exist at law or equity for revocation of a contract. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (citing the savings clause in 9 U.S.C. § 2.) The Supreme Court addressed a California rule that classified "most collective-arbitration waivers in consumer contracts as unconscionable." *Id*. at 240. The Court explained that the "overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id*. at 344. Ultimately, the Court held that the FAA pre-empted this state law that had the effect of barring enforcement of a class-arbitration waivers.

The Eleventh Circuit has also held that "arbitration agreements precluding class action relief are valid and enforceable." *Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 877-78 (11th Cir. 2005). Additionally, the Supreme Court of Nevada has held likewise. *Tallman v. Eighth Jud. Dist. Ct.*, 131 Nev. Adv. Op. 71, 359 P.3d 113, 122 (2015) ("*Concepcion* teaches that the FAA protects class waivers in arbitration agreements, even when requiring individual arbitration hampers effective vindication of statutory claims.") (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and *American Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304 (2013)).

Plaintiff did not respond to the Motion to Compel Arbitration. Therefore, she did not raise any defense to the validity of the Class Action Waiver in the Arbitration Provision. Having found that the undisputed facts establish that the Arbitration Provision is valid and enforceable, the Court finds that the Class Action Waiver is valid and enforceable for the same reasons.

IV. Conclusion

Upon consideration, and for the reasons set forth herein, Midland's Motion to Compel Arbitration is **GRANTED,** the Class Allegations are **STRICKEN,** and Plaintiff's claims are referred for arbitration in accordance with the terms of the Arbitration Provision in the Account Agreement. Accordingly, Midland's request to stay this action is **GRANTED** and the action is **STAYED.** The parties are **ORDERED** to file a **status report** on or before **December 21, 2018**.

DONE and ORDERED this the 6th day of July 2018.

**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**